222 P.3d 142 (2009)
2009 WY 155
In the Matter of the Termination of Parental Rights to ATE, KOE, ETE, ME, FDE, Minor Children,
State of Wyoming, Department of Family Services, Appellant (Petitioner),
v.
TWE, III, Appellee (Respondent).
No. S-09-0123.
Supreme Court of Wyoming.
December 30, 2009.
*143 Representing Appellant: Bruce A. Salzburg, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General. Argument by Ms. Kucera.
Representing Appellee: Kenneth Bert DeCock, Plains Law Offices, LLP, Gillette, Wyoming.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
BURKE, Justice.
[¶ 1] The district court denied a petition by the Wyoming Department of Family Services to terminate Father's parental rights. DFS appeals that decision. We will affirm.

ISSUES
[¶ 2] The Department states two issues for our review:
1. Whether the State of Wyoming, Department of Family Services, presented clear and convincing evidence to show reasonable efforts were made to rehabilitate the family, and such efforts were unsuccessful or refused by the Father, and the children's health and safety would be jeopardized by return to the Father, including the mental health of the minor children.
2. Whether the State of Wyoming, Department of Family Services, presented clear and convincing evidence to show that the Father was unfit to have the care and custody of the minor children.
[¶ 3] As an additional issue, Father asks us to consider whether the case has become moot.

FACTS
[¶ 4] In early 2005, DFS received reports of a family living in an extremely dirty home, and of a child from that home with significant and ongoing dental problems. In response to the reports, the social worker visited the home, accompanied by a detective from the local police department. Father and Mother lived in the home with their five children, ranging in age from approximately nine and a half years to six months. The home was "in somewhat disarray," with food and dirt on the kitchen floor, debris and toys scattered throughout the house, and dirty bathroom fixtures. Safety concerns included broken and missing light switch covers, and a toilet and bathtub that needed repair. The social worker described the children as dirty and "unkept," but said that they appeared happy and relatively healthy, except for the one child with dental problems.
*144 [¶ 5] On several occasions over the next two months, the DFS social worker counseled Mother on various community services available to her. The social worker met with Father only occasionally because of his work. The social worker observed no positive changes in the family's situation. She also became increasingly concerned about the children's behavioral problems at school, about them not having proper clothing for cold weather, and about the family not having enough food in the home.
[¶ 6] In May of 2005, DFS filed charges of child neglect against Father and Mother. After an initial hearing before the juvenile court, the children were taken into custody by DFS and placed in foster care. In July of 2005, Father and Mother admitted to the allegations of neglect and, pursuant to court order, the children remained in the custody of DFS.
[¶ 7] In April of 2007, nearly two years after taking custody of the children, DFS filed a petition to terminate Father's parental rights. Because pertinent details will be reviewed in the discussion below, we provide here only an overview of that two year period. During the summer of 2005, a DFS case worker began working with Father and Mother with the goal of reuniting the family. Father and Mother decided to separate, however, and moved out of the home into smaller, separate places. Neither had enough room to take back all five children or the financial resources to support them all, so the DFS case worker considered a plan for three of the children to be returned to Mother and two to Father. That plan was short-lived because, at some time not specified in the record, Mother left the State of Wyoming. She had only minimal contact with the children and DFS after that, and her parental rights were eventually terminated. Mother did not appeal, and her parental rights are not at issue.
[¶ 8] Father's case was handled by a series of case workers, five in total, some lasting only a few months. Testimony at trial suggests that Father got along much better with some of the case workers than he did with others, and that his hopes for reuniting his family waxed and waned accordingly. A major source of friction between Father and the case workers was his continuing use of marijuana. At the request of DFS, Father submitted to a significant number of urinalysis tests, and all or nearly all of them were positive for marijuana. Father was cited twice for criminal contempt by the juvenile court. Both instances related to his use of marijuana. DFS refused to allow Father visitation with his children if his urinalysis results were positive, and as a result, Father had no contact with the children for substantial periods of time. In addition, Father's efforts to comply with other requirements established by DFS were sporadic at best. He attended only the first of fifteen required parenting classes. He did not obtain a mental health evaluation. He obtained a substance abuse evaluation, but did not participate in any of the required rehabilitation treatments.
[¶ 9] In January of 2009, the district court held a three-day bench trial on the petition to terminate Father's parental rights. At that time, the children remained in foster care, and DFS had developed plans to place them in an adoptive home. Father opposed the petition. In March of 2009, the district court entered its order denying the petition. DFS has appealed that decision, bringing the case to us for review.

STANDARD OF REVIEW
[¶ 10] The case for termination of parental rights must be made by
clear and convincing evidence.... Because association with one's immediate family is a fundamental liberty interest, application of the "clear and convincing" standard to evidence supporting termination becomes the subject of strict scrutiny at the appellate level. Exacting though such scrutiny may be, we undertake examination of the evidence in a light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.
DKM v. RJS, 924 P.2d 985, 987 (Wyo.1996) (internal citations omitted). We have applied this standard of review in a large number of *145 cases, including recently, JD and SE v. State of Wyoming, Dept. of Family Services, 2009 WY 78, ¶ 11, 208 P.3d 1323, 1326 (Wyo.2009).

DISCUSSION
[¶ 11] Because it is potentially dispositive, we turn first to Father's argument that the case has become moot. He bases this argument on an assertion that in August of 2009, during the pendency of this appeal, a hearing was held in the juvenile matter, and Father's children were placed in the legal and physical custody of DFS for placement with Father. He supports this assertion with the affidavit of his counsel, which is attached to his brief on appeal. DFS contends that we cannot consider the supporting affidavit because it is not properly part of the record on review. We agree with DFS.
We have consistently ruled that an appellant bears the burden of bringing to the reviewing court a sufficient record on which to base its decision, and he cannot supplement the appellate record by attaching documents to his brief. The rules of appellate procedure provide a basis for supplementing the official record, and we will not condone a party's failure to utilize the rules by considering documents which are simply attached to a brief.
Roeschlein v. State, 2007 WY 156, ¶ 28, 168 P.3d 468, 476 (Wyo.2007) (internal citations and punctuation omitted). Because the record contains no proper support for Father's assertion, we need not consider it further. Even if we did consider it, we would be unlikely to accept Father's argument. A case is moot "when a decision can have no practical effect." In Interest of SNK, 2003 WY 141, ¶ 18, 78 P.3d 1032, 1038 (Wyo.2003). This case is not moot because, as DFS contends, our decision can have a practical impact on DFS's subsequent actions, Father's parental rights, and the children's futures.
[¶ 12] DFS petitioned to terminate Father's parental rights pursuant to two statutory subsections. Each subsection sets forth a separate and independent basis for termination, and DFS may prevail on a petition to terminate parental rights if it proves the elements listed in any one of the subsections. JD, ¶ 12, 208 P.3d at 1327. To determine whether DFS proved the elements of either statutory subsection, we will consider each of the two subsections separately and in turn.
[¶ 13] Pursuant to the first pertinent statutory subsection:
(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence: ...
(iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent[.]
Wyo. Stat. Ann. § 14-2-309(a)(iii) (LexisNexis 2009). Father admitted that his five children had been neglected before they were removed from his home. He denied that DFS had made reasonable efforts toward rehabilitating the family, and further denied that he had refused rehabilitative treatment. He also asserted that the children's health and safety would not be jeopardized if they were returned to him.
[¶ 14] Evidence presented by DFS, and essentially undisputed, indicated that the agency had offered Father and his children a number of rehabilitative services, including educational services, counseling, medical care, foster care, parenting classes, transportation, financial guidance and resources, and visitation. Evidence further indicated that Father largely failed to take advantage of these services. For example, Father attended only one of the fifteen required parenting classes. He obtained a substance abuse evaluation, but never began the required treatment program. During some substantial periods of time, his visitation with the children was minimal or non-existent. As noted above, Father's urinalysis tests were consistently positive for marijuana. This evidence, considered alone, would suggest that DFS made reasonable efforts to rehabilitate the family, and that Father refused rehabilitative treatment.
*146 [¶ 15] But there is more to the story, and given the applicable standard of review, we are bound to consider the evidence in a light most favorable to Father. When the first case worker handled Father's case, Father visited the children about once a week, and the case worker described the visits as "going fine ... going well." After Father and Mother separated, he moved into a different home, and this DFS case worker visited to evaluate whether the children could live there. She described the home as small but clean, and said she had no concerns about the children living there. By September of 2005, Father believed that the children, or some of them, would be returned to him soon.
[¶ 16] Near the end of September, however, the first case worker took maternity leave, and a different case worker was assigned to Father's case. Almost immediately, the new case worker informed Father that the children would not be returned to him. Father said that he and the second case worker "bumped heads" over this, and to avoid conflict, Father broke off or reduced contact with her. Even so, Father continued to have some visitation with the children, and in May of 2006, the second case worker reported that the visits were going well, and observed that the children appeared "well bonded and secure" with Father.
[¶ 17] Although the record is somewhat vague about why, Father was ordered to submit to a urinalysis in December of 2005. The test was positive for marijuana. Father submitted to numerous urinalysis tests over the next few months, and all or nearly all of them were positive for marijuana. At some point, DFS told Father that he could not have visitation with the children if he tested positive. As the district court noted, this condition was not consistent with the court's previous orders regarding the family. Those orders specified that Father could be denied visitation if DFS had "reasonable cause to believe [Father was] under the influence" of alcohol or a controlled substance. Evidence at trial indicated that a positive urinalysis does not necessarily indicate that the person is currently under the influence because "it takes too long for cannabis, THC, to get through your system." Nevertheless, DFS denied Father visitation with his children if he had a positive urinalysis.
[¶ 18] In June of 2006, a third case worker was assigned to Father's case. In February of 2007, a fourth case worker was assigned to Father's case. Both case workers continued to deny Father visitation if he had positive urinalysis results, and Father's visits with his children became very infrequent. Father's positive tests also resulted in other difficulties. For example, Father was required to have the children with him during parenting classes. He attended the first parenting class with the children, but when DFS denied him visitation because of positive urinalysis results, he was not allowed to attend the rest of the parenting classes. In November of 2007, based on a stipulation between the guardian ad litem and the county attorney, the district court ordered that Father could have visitation even if he had positive urinalysis results. When Father went for a visit with the children, he was told, or led to believe, that he would be cited for possession of marijuana if he had a positive urinalysis. This further discouraged Father from pursuing visitation.
[¶ 19] The district court, after hearing and considering the evidence, issued a decision letter that is worth quoting here at some length. The district court left no doubt about its condemnation of Father's drug use:
To be clear, the court in no way condones [Father's] use of marijuana. To the contrary, the court finds [Father's] conduct in this regard reprehensible, self-centered, and devoid of any respect for the laws of this state regarding marijuana. However his conduct in this regard should not be confused with whether consistent, reasonable efforts were made by the government.
The district court was equally clear about its evaluation of DFS's efforts to rehabilitate the family:
The court cannot conclude that reasonable efforts were made to rehabilitate the family. Certainly, it appears DFS spent a considerable amount of time on this case and had a large number of contacts with the family members. On the other hand, [Father's] testimony, taken together with... documents in the juvenile file, leads *147 this court to question the approach taken by DFS in dealing with [Father].
Both the Temporary Order and the Order of Disposition allowed DFS discretion regarding visits between the children and the parents and stated that there were to be no visits if DFS workers had reasonable cause to believe the parents were under the influence. [Eventually,] DFS workers required [Father] to submit to testing. It is with some reluctance that the court admits that it agrees with [Father]: the initial reason for DFS involvement with this family was not related to [Father's] marijuana use. It was due to the continued failure of the parents to provide sanitary living conditions and provide prompt and appropriate medical/dental care for the children....
So, what began as a case about ensuring [that the] children had a clean, safe environment with appropriate medical, dental and other care, became a case about whether [Father] wanted to be with his children enough to stop using marijuana. The court understands [Father's] frustration with the situation. At one point, he was required to attend a parenting class. He was not allowed admission to the parenting class because he was supposed to bring the children with him. But, he was not allowed to have the children with him because he had had a positive [urinalysis] for marijuana. DFS then uses this non-compliance with requirements to support the petition to terminate parental rights.
In addition, the sheer number of social workers assigned to [Father's] case would be, at a minimum, confusing and distressing to anyone. And, in fact, in this case it appears that the directives and messages from social worker to social worker varied in degrees from approval to near hostility. When one factors in the apparent discrepancies in management of the cases between those workers, it is easy to grasp how [Father] became frustrated with the government's handling of efforts to reunify parent and children....
Given the forgoing, the court is unable to conclude that reasonable efforts were undertaken by DFS to rehabilitate this parent with respect to the situation that brought the family to the attention of the State.
(Internal footnotes omitted.)
[¶ 20] Termination of parental rights under this statutory subsection also requires clear and convincing evidence that "the child's health and safety would be seriously jeopardized by remaining with or returning to the parent." Wyo. Stat. Ann. § 14-2-309(a)(iii). As the district court wrote, the State "did not present evidence regarding the cleanliness or safety of [Father's] current living situation." In contrast, Father presented evidence that he was living with his mother, his girlfriend, their child, and her four other children, in a home that was reasonably large, clean, and safe for children. Testimony from Father's girlfriend portrayed him as a good father figure for her five children, and the girlfriend's mother agreed. Another witness, a single parent, testified that her son had exhibited behavioral problems, that Father had volunteered to spend time with him, and that Father had been successful in helping her son.
[¶ 21] The district court's evaluation of this evidence led it to conclude that the State had not proven with clear and convincing evidence that returning the children to Father would be a risk to their health or safety. The district court explained as follows:
The court has no doubt that [Father] continues to use marijuana, but the State did not demonstrate that that fact would result in jeopardy to the health and safety of the... children. No evidence of any kind was provided indicating that the parenting problems were the result of his drug use. While the court has concern that [Father] will be able to successfully provide for them all, having a large number of children does not necessarily jeopardize [the] health and safety of those children. And, certainly, the court may not simply assume that having ten children in a household creates a per se risk to the health and safety [of] all, or any, of the children.
[¶ 22] In a case involving the termination of parental rights, "the determination of the ultimate issues ... require[s] a review of subjective, qualitative factors." CL v. Wyoming *148 Dept. of Family Services, 2007 WY 23, ¶ 30, 151 P.3d 1102, 1109 (Wyo.2007). The district court is in "the best position to make those difficult factual determinations" because the district court judge "actually sat in the courtroom and observed the demeanor of the witnesses." Id. We therefore defer to the district court's findings of fact. In Father's case, there is no dispute that the district court correctly interpreted and applied Wyo. Stat. Ann. § 14-2-309(a)(iii), and our review of the record reveals sufficient evidence to support its findings of fact. We will not disturb the district court's decision under this statutory subsection.
[¶ 23] We turn next to the second statutory subsection under which DFS sought termination of Father's parental rights. Pursuant to this provision:
(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence: ...
(v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]
Wyo. Stat. Ann. § 14-2-309(a)(v).
[¶ 24] There is no dispute that Father's children were in foster care for more than the required fifteen months. As stated above, there was evidence of Father's use of marijuana, but DFS did not provide evidence to connect his marijuana use with his unfitness as a parent. As also stated above, there was testimony that Father was a good father figure to his girlfriend's children despite his marijuana use. In addition, there was testimony that Father never used marijuana in the presence of the children. The district court's decision letter summarized the evidence and explained its decision as follows:
[T]he court cannot make the finding that [Father] is unfit to have custody and control of the children. Even admitting that he would require some level of state assistance to care for all ten children does not make him unfit. Many families live in poverty and require state assistance to provide for the necessities of life. This does not make the parents unfit. It defines them as being poor and under our laws being poor is not per se an element of neglect. Drug use certainly may cause a parent to be unfit [but the] evidence in this case does not support such a finding by the court under the clear and convincing evidence standard.
(Emphasis in original.)
[¶ 25] Under the applicable standard of review, the district court's decision is subject to strict scrutiny, and we defer to the district court's findings if they are supported by evidence in the record. In this case, the district court correctly applied the law, and there is evidence in the record sufficient to support its findings of fact. Under this standard of review, we affirm the district court's decision.