2010 WY 142

**In the Matter of the Termination of Parental Rights to KMJ and JDAJ, Minor Children,**

**AJJ, Appellant (Respondent),**

**v.**

**The State of Wyoming, Department of Family Services, Appellee (Petitioner).**

**No. S–10–0038.**

Supreme Court of Wyoming.

Nov. 4, 2010.

Representing Appellant: John M. Burman, Director, Legal Services, UW College of Law; Benjamin Hewett, Student Intern. Argument by Mr. Hewett.

Representing Appellee: Bruce A. Salzburg, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General. Argument by Ms. Kucera.

Guardian Ad Litem: Jan K. Flaharty, Sheridan, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, AJJ, challenges the district court's order terminating his parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v) (LexisNexis 2007). He contends there was insufficient evidence to support the district court's finding that he was unfit to have custody and control of the children. He also claims that the Department of Family Services (DFS) failed to prove that less intrusive alternatives to termination of his parental rights were impractical. We affirm.

## ISSUES

[¶ 2] The issues on appeal are:
1. Whether the district court's determination that Appellant's parental rights should be terminated was established by clear and convincing evidence.
2. Whether DFS was required, under Wyo. Stat. Ann. § 14-2-309(a)(v), to prove that less intrusive alternatives to termination of Appellant's parental rights were impractical.

## FACTS

[¶ 3] Appellant is the father of KMJ and JDAJ. KMJ was born in 2003. JDAJ was born in 2004. Their mother died in a car accident in April 2007. Appellant was in prison at the time. The children were taken into protective custody and have been in the custody of DFS since that time. JDAJ has never lived with Appellant, and KMJ only lived with Appellant for the first year of her life.

[¶ 4] The first involvement of DFS with the family occurred in 2003, shortly after KMJ was born. At that time, DFS received a report indicating that the home was unsafe and unsanitary. A few months later, KMJ was taken into protective custody for a short period of time, amid reports that she was not being fed properly and had been left with many different caretakers without contact information for the parents.

[¶ 5] In June 2004, Appellant was convicted of being a felon in possession of a firearm and ammunition, and was sentenced to serve 51 months in a federal prison. This was his third felony conviction. Appellant was previously convicted of grand larceny in 1994 and of felony child abuse in 1996. The felony child abuse conviction resulted from Appellant's physical abuse of a fifteen-month-old child. The abuse included force feeding the child cigarettes and tobacco, burning the child on the hands and feet, and causing bruising to the child's buttocks, thigh, and forehead. Appellant was not the child's father.

[¶ 6] In October 2005, DFS again received information concerning the condition of the home and the children. At the time, the children lived only with Mother because Appellant was in prison. DFS worked with Mother and provided services to preserve the family unit in the home, but eventually requested that the county attorney file a neglect petition.

[¶ 7] A Juvenile Neglect Petition was filed in March 2006. Mother admitted the

allegations. Despite the admission, the children were permitted to remain in Mother's custody while she worked with DFS to achieve the goals established in a case plan. During this period, Mother and Appellant expressed their intention to divorce. The divorce was not finalized prior to Mother's death.

[¶ 8] After Mother's death, the children were taken into protective custody and placed in a foster home. The Multi–Disciplinary Team (MDT) and DFS recommended a permanency plan of adoption due to Appellant's incarceration, his inability to care for the children for an extended period of time, and his history of child abuse. The district court initially accepted the recommendation but also provided Appellant the opportunity to participate in future MDT meetings and to respond to the permanency recommendation.

[¶ 9] Appellant was released from federal prison in November 2007, and entered a halfway house in Casper. He remained there until March 2008. At that time, Appellant returned to Sheridan and moved in with his parents. In May 2008, the district court reconsidered the permanency plan and issued an order finding that the most appropriate permanency plan was reunification with Appellant, with a concurrent plan of adoption.

[¶ 10] Subsequently, DFS and Appellant entered into a case plan. The plan identified the needs of the children and set goals for Appellant relating to obtaining housing and employment, attending counseling, and participating in regular visitation. In June 2008, Appellant and the DFS caseworker prepared an update to the case plan which identified more specific goals for Appellant. Appellant was advised that termination of his parental rights remained a possibility if he failed to meet the goals identified in the plan.

[¶ 11] Appellant did not satisfy his obligations under the plan. He failed to regularly attend counseling sessions. As a result, Appellant's first therapist "closed his file." He did not maintain consistent contact with the children's school and service providers. He failed to avail himself of the parenting education opportunities offered by DFS. Perhaps most significantly, Appellant failed to take advantage of the increased visitation with his children allowed by the plan and seldom telephoned the children, although the foster parents permitted frequent phone contact.

[¶ 12] In March 2009, DFS petitioned to terminate Appellant's parental rights. A guardian ad litem was appointed for the children. Appellant answered the petition in May 2009 and requested court-appointed counsel. The district court appointed counsel to represent Appellant. A bench trial was held in August 2009. Representatives of DFS and several other witnesses testified. Appellant also testified. The district court took the matter under advisement and issued its Order Terminating Parental Rights in September 2009. Appellant timely appealed.

## DISCUSSION

[¶ 13] The district court terminated Appellant's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v) which provides:

(a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:

. . .

(v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child.

[¶ 14] Appellant does not dispute that the children have been in foster care for the requisite number of months. He asserts, however, that DFS did not prove by clear and convincing evidence that he was "unfit to have custody and control" of the children. This Court strictly scrutinizes any proceeding terminating parental rights. We apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. *BA v. Laramie County Dep't of Family Servs.*, 2007 WY 128, ¶ 7, 163 P.3d 844, 847 (Wyo. 2007). We examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence pre-

sented by the unsuccessful party. *MN v. State of Wyoming, Dep't of Family Servs.*, 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo. 2003). We then review the evidence to determine if it clearly and convincingly establishes the statutory elements required to support termination. *EBH v. Hot Springs Dep't of Family Servs.*, 2001 WY 100, ¶ 14, 33 P.3d 172, 178 (Wyo.2001). Evidence is clear and convincing if it would persuade a trier of fact that the truth of the contention is highly probable. *JLW v. CAB*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo.2010).

[¶ 15] The term "unfit" is not defined in the statute, but we have previously recognized:

> [F]itness includes the ability to meet the ongoing physical, mental and emotional needs of the child. Whether a parent is fit to have custody and control of a child is a decision that must be made within the context of a particular case and depends upon the situation and attributes of the specific parent and child.

*Id.*, ¶ 19, 224 P.3d at 19 (internal quotation marks and citations omitted). The district court found Appellant unfit to have custody and control of the children based on several factors, including his criminal history, inability to care for the special needs of his children, and failure to participate in counseling or parenting education.

[¶ 16] At trial, the district court observed that the child abuse conviction was "one of the most damning pieces of evidence" and was "pretty tough evidence for [Appellant] to overcome." In its decision letter, the district court stated:

> [Appellant] committed child abuse of a 15 month old child in December 1995. The abused child was a household member at the time but not the child of [Appellant]. The abuse included cigarette burns on the hands and feet, force feeding cigarettes and chewing tobacco, and bruising of the right thigh and buttocks of the child. The child's injuries were severe. [Appellant] was convicted of felony child abuse and sentenced to a period of not less than two nor more than four years in prison. [Appellant] also has prior convictions for battery in 1990 and felony larceny in 1994.

> [Appellant] was involved in other incidents of domestic disputes, battery and weapons violations which did not result in arrests or convictions. [Appellant] was convicted of federal charges of being a felon in possession of a firearm and felon in possession of ammunition on June 9, 2004. [Appellant] was sentenced to a term of fifty-one (51) months in federal prison. [Appellant] was also placed on the central registry maintained by DFS pursuant to W.S. § 14–3–213.

Appellant asserts the district court erred by focusing on the previous child abuse conviction rather than his current fitness as a parent.

[¶ 17] Appellant correctly states that the statute requires a finding of unfitness at the time of the termination proceedings. *See In re AE*, 2009 WY 78, ¶ 17, 208 P.3d 1323, 1328 (Wyo.2009). That does not mean, however, that the district court must ignore evidence of a parent's previous unfitness. *Id.*, ¶ 18, 208 P.3d at 1328. Appellant has three felony convictions. He also has a battery conviction and documented involvement in two domestic disputes. Appellant argues he has been rehabilitated following the child abuse conviction, but evidence demonstrates he refuses to take responsibility for the incident. He described the event as "I apparently burned the kid's hand and bruised her side or something." During his therapy sessions, Appellant initially could not articulate any memory of the child abuse. He then stated that he was not present when it occurred. Later, he blamed the incident on false accusations, other people's negligence, and bad luck. One of Appellant's therapists stated that Appellant "essentially told him that the child abuse did not happen." Appellant's attempt to minimize the event and his failure to take responsibility for his past abusive conduct was important and relevant evidence that the district court could properly take into account in determining Appellant's current parental fitness. "It is appropriate for a district court to consider a parent's history and pattern of behavior over time in determining whether rights should be terminated." *JLW*, ¶ 24, 224 P.3d

at 20. We find no error in the district court's consideration of this evidence.

[¶ 18] Additionally, the district court did not rely solely on Appellant's criminal history in determining unfitness. It also found that Appellant "is not fit to meet the specific physical, mental and emotional needs of [the children]." Both children have special needs. KMJ has a history of being developmentally behind in several areas, suffers from tremors, and has an Individualized Education Plan (IEP) at school. KMJ's foster mother, and other care providers, testified that the child gets extremely nervous, cries, and is upset by any unexpected interruption to her daily routine. JDAJ's social skills and cognitive abilities are delayed and he also suffers from tremors. Appellant was offered counseling and training to help him understand and meet the special needs of his children, but he did not accept this help. At trial, he testified that the childcare providers and doctors did not understand the needs of his children. When asked about the condition of his children he testified that "they ain't that fragile" and "nobody knows" their needs.

[¶ 19] The district court also determined that Appellant did not meet other requirements of the DFS case plan. He did not maintain steady employment or establish a suitable home for the children. When given the opportunity to visit the children more than once a week, Appellant declined, even though he was unemployed for the six months prior to the termination of his parental rights, and DFS offered vouchers to help him with travel expenses. Appellant rarely called the children at their foster home, though he was encouraged to call every night. He contacted the children's teachers only twice during the period of time between his release from incarceration and the termination of his parental rights. He seldom met with his counselors.

[¶ 20] In a sufficiency of the evidence review, we give considerable deference to the district court's determination because it has the advantage of observing the demeanor of the witnesses. *DH v. Dep't of Family Servs.*, 2003 WY 155, ¶ 54, 79 P.3d 997, 1012 (Wyo.2003). In that regard, the district court noted:

[Appellant's] demeanor and credibility was a factor for the Court even when affording considerations for nervousness and [Appellant's] intellectual limitations. Simply put, [Appellant] did not do well while testifying. He had difficulty answering straightforward questions, lacked cogency, and appeared to completely be unable to comprehend the gravity of the proceeding or the responsibility of having care and custody of two young children both of which have special needs.

The district court's decision is supported by clear and convincing evidence.

[¶ 21] In his second issue, Appellant asserts that "DFS and the state had a duty to examine less intrusive means [and] it was their burden to prove their impracticability." He contends that DFS was required to prove that it had considered, for example, appointing a guardian for the children while allowing Appellant to retain some residual parental rights. Appellant supports his assertion that DFS was required to pursue "less intrusive" alternatives to termination by citing our decisions in *TR v. Washakie County Dep't of Public Assistance*, 736 P.2d 712, 718 (Wyo. 1987) and *In re Parental Rights of PP*, 648 P.2d 512, 514 (Wyo.1982). In these cases, however, the district court terminated parental rights pursuant to a different statutory subsection, Wyo. Stat. Ann. § 14–2–309(a)(iii). That subsection provides for termination of parental rights if:

The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent.

In evaluating whether parental rights were properly terminated under subsection (a)(iii), we have recognized that DFS must prove it has attempted "less intrusive" alternatives as part of its "reasonable efforts" to rehabilitate

the family.[1]  *TR*, 736 P.2d at 718.  However, when termination is sought pursuant to other subsections of Wyo. Stat. Ann. § 14–2–309, we have held that "reasonable efforts to rehabilitate the family" are not required:

> The remaining six subsections of § 14–2–309(a) do not require DFS to make rehabilitation efforts.  Giving the plain language of the provision its ordinary meaning, only subsection (a)(iii) addressing abuse and neglect by a parent requires reasonable efforts to rehabilitate the family.

*In re SJJ*, 2005 WY 3, ¶ 32, 104 P.3d 74, 83 (Wyo.2005); *see also In re AE*, ¶ 15, 208 P.3d at 1327.

[¶ 22]  Appellant's parental rights were terminated pursuant to Wyo. Stat. Ann. § 14–2–309(a)(v).  Under this statutory subsection, DFS must prove that the children have been in foster care for fifteen of the most recent twenty-two months and that the parent is unfit to have custody and control of the children.  DFS satisfied that burden by clear and convincing evidence.

[¶ 23]  Affirmed.

---

1.  Appellant contends that "guardianship with residual parental rights" is a "less intrusive" alternative to termination similar to those discussed in *TR* and *PP* where termination was sought pursuant to Wyo. Stat. Ann. § 14–2–309(a)(iii).  DFS disagrees, contending that guardianship is not considered a "less intrusive" alternative under Wyoming law.  In light of our decision, we need not resolve that issue.