NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DONETRIUS W.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.W.,
*Appellees*.

No. 1 CA-JV 17-0410
FILED 3-29-2018

Appeal from the Superior Court in Maricopa County
No.  JD38095
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1         Donetrius W. ("Father") appeals the superior court's order severing his parental rights to his daughter P.W.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2         P.W. was born marijuana-exposed in February 2015.  The Department of Child Safety ("DCS") took custody of P.W. in May and filed a dependency petition against Father and the child's mother, alleging substance abuse and neglect.  DCS provided Father with visitation, a case aide, drug counseling through TERROS and drug screening through TASC.  Between May 2015 and November 2016, Father tested positive for marijuana three times and missed 30 tests.  He took his last recorded drug test in July 2015 and failed to submit a single sample that tested negative for marijuana.  At one point during the proceedings, Father raised a religious objection to submitting samples for drug testing, testifying that he used marijuana in connection with his beliefs as a member of the Hebrew-Israelite and Rastafarian religions.  After the court asked him to provide documentation of these beliefs, he did not do so, and subsequently withdrew his objection.

¶3         After an oral altercation between the parents and a DCS case aide during a supervised visit in December 2015, the court suspended visitation at DCS's request.  On February 17, 2016, the court resumed therapeutic visitation aimed at improving interactions between P.W. and Father and helping Father learn how to manage himself in front of children. Father attended these visitations sporadically, often cancelling or showing up late.  Father also continued to smoke marijuana through this time, failing to take a single test between January and August 2016, even though DCS opened "a handful of referrals" for drug testing at TASC.

¶4         The superior court found P.W. dependent as to Father in May 2016, adopting a case plan of reunification and ordering DCS to provide Father "urinalysis testing through TASC, substance abuse assessment and treatment through TERROS, psychological evaluation, therapeutic

visitation, and transportation as needed and requested." The court changed the case plan to severance and adoption in July 2016, after which DCS moved to sever Father's parental rights based on nine months' time-in-care.

¶5 The superior court held a severance hearing over several days during January through July 2017, at which it heard testimony from Father; Dr. James Thal, Ph.D.; Dr. Dale King, the visitation therapist; Jacqueline Padilla, Father's case manager at DCS; and the child's mother. King testified that in February it had been more than three months since Father last attended a visitation session. In March the court ordered Father to undergo a urinalysis test and took under advisement Father's renewed objection that he could not submit a hair sample because of his religious beliefs. The court ultimately ordered that Father either provide documentation of his religious beliefs or give a sample of his hair for drug testing; Father did neither.

¶6 The superior court terminated Father's parental rights based on nine months' time-in-care pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a) (2018).[1] The court found Father willfully refused to participate in drug testing and treatment even though he knew he should have refrained from smoking marijuana and should have submitted to drug testing. The court found severance was in P.W.'s best interests because she was placed with an extended family member who intended to adopt her and who could provide stability and permanency. Father timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

## DISCUSSION

¶7 The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

**¶8**        We review a termination order for an abuse of discretion. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). On appeal, this court will affirm a severance order unless it is clearly erroneous. *Id.*

**¶9**        Under § 8-533(B)(8)(a), DCS must show that the "child has been in an out-of-home placement for a cumulative total period of nine months or longer," that DCS "has made a diligent effort to provide appropriate reunification services," and that "the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." Under the statute, the circumstances that cause the child to be in an out-of-home placement are those that exist at the time of severance. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

**¶10**        In reviewing the superior court's determination that a parent "substantially neglected or willfully refused to remedy the circumstances" that cause a child to remain in the care of the state, we focus on the parent's "effort to cure" those circumstances rather than the parent's "success in actually doing so." *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 17 (App. 2015) (citing *Marina P.*, 214 Ariz. at 329, 330, ¶¶ 20, 22). Severance is thus inappropriate when "a parent has made appreciable, good faith efforts to comply" with the services offered by DCS, but may be appropriate where the parent has made "only sporadic, aborted attempts to remedy . . . the circumstances during the nine-month period." *Donald W., Sr. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 199, 205, ¶ 16 (App. 2007) (quotations omitted).

**¶11**        On appeal, Father does not dispute that his child has been in an out-of-home placement for longer than nine months or that DCS made diligent efforts to provide appropriate reunification services, and the record amply supports both these findings. Nor does Father suggest that severance is not in the child's best interests. Instead, Father argues that DCS failed to clearly and convincingly show that he substantially neglected or willfully refused to remedy the circumstances that led P.W. to be in an out-of-home placement.

**¶12**        In support, Father cites his testimony that he stopped smoking marijuana in October 2016 (with only one relapse, which he testified occurred in May 2017), that he has been employed during this case,

and that he lives with the child's mother in a residence large enough to accommodate his child. Father testified that after he was closed out of TERROS unsuccessfully, he began substance-abuse classes at another facility called "CHC," but he failed to provide the court any documentation of these classes. Although Father testified he stopped using marijuana in October 2016, the record showed that he did not submit to another drug test after that point.

¶13    Thal conducted a psychological examination of Father on December 14, 2016. After examining him, he concluded Father has "Cannabis Use Disorder" and testified that Father's marijuana use affected his ability to parent. Thal concluded that "[t]he prognosis that [Father] will be able to provide minimally adequate parenting skills in the foreseeable future is guarded," that a child in Father's care "could be neglected and inadequately supervised due to [his] cannabis use," and recommended that the child not be returned to Father. Thal's report recommended that Father "submit consistently clean random [urinalyses] without misses or diluted results," that Father release his medical information from "CHC" to DCS, and that Father work "conscientiously" with the visitation therapist. In the several months between Thal's examination and the conclusion of the severance hearing, however, Father failed to comply with any of Thal's recommendations.

¶14    The superior court found Father substantially neglected or willfully refused to remedy the circumstances requiring placement because he made insufficient efforts to address his marijuana abuse even though he must have recognized he needed to stop using marijuana. DCS presented evidence it offered Father drug counseling and drug testing, but that Father was unsuccessfully closed out of drug counseling at TERROS and unsuccessfully closed out of repeated referrals for drug testing at TASC, including both hair follicle testing and urinalyses. The only drug tests Father took during this case tested positive for marijuana. Conversely, the only evidence that Father engaged in drug counseling or that he had stopped using marijuana was his own testimony that he stopped using marijuana in October 2016, more than 16 months after DCS took custody of the child. Even then, Father admitted that he had a relapse in May 2017, during the time of the severance trial and after P.W. had been in an out-of-home placement for two years. And he declined to submit either a hair or urine sample during the months over which the severance hearing proceeded.

¶15    Although severance is not appropriate in every case in which a parent fails to cure his addiction, it is appropriate when, as here, the

parent "expended only minimal effort toward remedying [his] addiction . . . or establishing a relationship with [his] daughter." *Maricopa County Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). Reasonable evidence supports the superior court's finding that Father substantially neglected or willfully refused to remedy the circumstance of substance abuse that caused the child's continuing out-of-home placement.

¶16 Father also argues the superior court erred in terminating his rights without finding that his marijuana use rendered him "unable to discharge parental responsibilities." *See* A.R.S. § 8-533(B)(3). But Father misinterprets the statute. The court terminated his rights under § 8-533(B)(8)(a) (nine months' time-in-care and "parent has substantially neglected or wilfully refused to remedy the circumstances" causing placement). That statutory ground does not require the court to find that a parent is unable to discharge parental responsibilities. *Cf.* A.R.S. § 8-533(B)(3) (chronic abuse of dangerous drugs causing parent to be "unable to discharge parental responsibilities"); -(8)(c) (15 months' time-in-care; "substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future"). When a statute applies a requirement in one circumstance but not another, we infer that the requirement applies only when expressly stated. *See Boynton v. Anderson*, 205 Ariz. 45, 47-48, ¶¶ 8-11 (App. 2003).

¶17 Moreover, Father's contention that his parental rights were severed because of his "mere usage" of marijuana is unfounded. Thal concluded that Father's persistent marijuana use adversely affected his ability to parent to such a degree that a child in Father's care "could be neglected and inadequately supervised due to [his] cannabis use" and recommended that the child not be returned to Father. And in its order terminating Father's rights, the court cited Thal's testimony that a child would not be "safe around Father" because of Father's continued use of marijuana.

¶18 Father's reliance on *Darren G. v. Dep't of Child Safety*, 1 CA-JV 16-0078, 2017 WL 83344 (Ariz. App. Jan. 10, 2017) (mem. decision), is unavailing because it is a memorandum decision that did not address parental termination under § 8-533(B)(8). The out-of-state cases Father cites similarly are unavailing because they address terminations under statutes with different requirements than those at issue here. *See In re K.M.A.-B.*, 493 S.W.3d 457, 468, 472 (Mo. App. 2016) (statute required finding that the conditions leading to out-of-home placement still existed "or conditions of a potentially harmful nature continue to exist" and finding that the parent was unlikely to remedy the conditions "or the continuation of the parent-

child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home"); *In re ATE*, 222 P.3d 142, 145, ¶ 13 (Wyo. 2009) (statute required that the "child has been abused or neglected by the parent").

**¶19** Father, who does not hold a current medical-marijuana card, also argues that because marijuana use is legal in several other states, the Privileges and Immunities Clause of the United States Constitution prevented the superior court from severing his parental rights based on his marijuana usage. *See* U.S. Const. Art. IV, § 2, Cl. 1; U.S. Const. Amend. XIV, § 1. But marijuana use generally is illegal under both Arizona and federal law. *See* A.R.S. § 13-3405(A)(1) (2018); 21 U.S.C. § 812(c); *Gonzales v. Raich*, 545 U.S. 1, 14 (2005). And in any event, as noted above, DCS presented evidence that Father's persistent marijuana use adversely affected his ability to parent.

## CONCLUSION

**¶20** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA