2009 WY 94

**In the Matter of the Termination of Parental Rights to SRJ and CDJ, minor children:**

**MDW, Appellant (Respondent),**

**v.**

**Hot Springs County Department of Family Services, Appellee (Petitioner).**

**No. S–09–0011.**

Supreme Court of Wyoming.

July 28, 2009.

Representing Appellant: Larry B. Jones, Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Christina McCabe, Assistant Attorney General. Argument by Ms. McCabe.

Guardian Ad Litem: Bobbi Dean Overfield, Messenger & Jurovich, PC.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]  Mother, MDW, appeals the district court's decision terminating her parental rights.  We affirm.

### ISSUES

[¶ 2]  Mother lists two issues:

1.  The district court erred in finding clear and convincing evidence existed to terminate the parental rights of Appellant under Wyo. Stat. § 14–2–309(a)(iii) (Lexis-Nexis 2007).  The evidence was not sufficient to establish "reasonable efforts" to rehabilitate the family by the Appellee.

2.  The district court erred in finding clear and convincing evidence existed to terminate the parental rights of Appellant under Wyo. Stat. § 14–2–309(a)(v) (Lexis-Nexis 2007).  The evidence was not sufficient to establish Appellant was an "unfit parent" at the time of the hearing.

### FACTS

[¶ 3]  MDW is the biological Mother of SRJ, born in 1994, and CDJ, born in 1997. In 2005, Mother lost her job and her apartment in Casper, Wyoming, and she and her daughters moved in with relatives in Thermopolis.  There, she began telephoning the local police chief about concerns for her daughters' safety and her own.  On October 13, 2005, Mother met with the police chief, and one of several fears she expressed was that someone was poisoning her food.  Mother agreed to testing at the hospital.  She tested positive for methamphetamine.  Based on Mother's positive drug test, her unusual behavior that he perceived as paranoid, and her expressed concern about the daughters' safety in their current residence, the police chief took the children into protective custody.

[¶ 4]  In subsequent court proceedings, Mother conceded allegations of child neglect made by the Department of Family Services.

The daughters were placed in foster care, and the Department began working with Mother on a case management plan with the stated goal of family reunification.  Plan objectives for Mother included maintaining a residence and stable employment, completing psychological and substance abuse evaluations and treatments, and engaging in appropriate visitation with the daughters.  After nearly two years, the Department concluded that Mother had not made satisfactory progress under the plan.  It petitioned to terminate her parental rights.  Following two days of testimony on July 28 and 29, 2008, the district court granted the petition. Mother appealed.[1]

### STANDARD OF REVIEW

[¶ 5]  Our standard of review in cases involving termination of parental rights has been stated as follows:

Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny.  As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.  Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination.  Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.

*MN v. Department of Family Servs.*, 2003 WY 135, ¶ 5, 78 P.3d 232, 234 (Wyo.2003) (internal citations omitted).

### DISCUSSION

[¶ 6]  The Department petitioned to terminate Mother's parental rights under

---

1.  The Department also petitioned to terminate the parental rights of the daughters' biological fathers, but the record before us does not dis-

close the district court's disposition with respect to the fathers.  This opinion therefore concerns only Mother's parental rights.

two separate statutory subsections. The first of these subsections, Wyo. Stat. Ann. § 14–2–309(a)(iii), provides that:

The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence: ... (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent.

On appeal, Mother does not challenge the conclusion that the daughters were neglected. She had admitted neglect in the earlier proceeding that led to the children's placement in foster care. She also does not dispute the conclusion that the daughters' health and safety would be seriously jeopardized if returned to her. That was established by evidence at trial including the unchallenged testimony of several witnesses.

[¶ 7] She does assert that there was insufficient evidence that the Department made reasonable efforts to rehabilitate the family, the second requirement under this statutory subsection. In its decision letter, the district court concluded that the Department's efforts were reasonable, basing its conclusion on these findings:

The Department of Family Services has provided assistance to [Mother]. The goals have been to maintain proper housing, to obtain employment, to cease substance abuse, to obtain counseling, to take drug tests, and to visit with the children. The mother has not maintained a stable residence, living in various households and cities. Her employment has been sporadic. She has continued substance abuse, testing positive on several occasions. She has not completed counseling and has not taken prescribed medications. She has made little or no progress in counseling. She has refused to take some of the drug tests. At times, her visitations with the children have not been appropriate, as she has discussed legal topics with them and has been confrontational with the social workers. She has missed some appointments and has been uncooperative with social workers at times. She has not always paid the requested support. She has not recognized her problems and taken responsibility for them.

[¶ 8] These findings are fully supported by evidence in the record. The Department's efforts are illustrated by the circumstances surrounding Mother's psychological evaluation and treatment. The required evaluation was not readily available in Thermopolis, so the Department made an appointment for Mother to meet with a psychologist in Billings, Montana. She refused to travel to the appointment. The Department then engaged a psychologist to come to Thermopolis to perform the evaluation. Mother completed the evaluation, but largely declined or failed to cooperate in subsequent counseling. At trial, several witnesses agreed that Mother had made little or no progress in the treatment of her psychological problems.

[¶ 9] The Department also sought to accommodate Mother's random drug testing by sending case workers to Mother's house rather than requiring her to come to the office. Still, Mother often refused to take the tests. One DFS worker said the refusals were "belligerent," and another described Mother "threatening" and "screaming" obscenities. The Department also made efforts to facilitate Mother's visits with her daughters. After Mother threatened one case worker who was supervising the visitation, the Department assigned another person to take over the task. When Mother moved to Worland, a case worker drove the daughters there for visitations. After one visit, Mother asked for a ride back to Thermopolis. During the trip, Mother's inappropriate behavior "kept escalating" until she was "screaming and yelling" and "out of control." One daughter was "crying" and "upset," and the case worker called law enforcement for assistance. After that incident, the Department arranged for Mother to visit with the daughters by telephone, and that practice continued after Mother moved to Casper. Overall, contrary to Mother's argument, the evidence at trial clearly and convincingly demonstrated the Department's reasonable but unsuccessful rehabilitation efforts.

[¶ 10] The district court also terminated Mother's parental rights pursuant to a

second statutory subsection, Wyo. Stat. Ann. § 14–2–309(a)(v), which requires clear and convincing proof that the children have been in the State's care for fifteen of the past twenty-two months, and that the parent is unfit. We have recognized that the several statutory bases for termination are separate and "independent." *DKM v. RJS*, 924 P.2d 985, 987 (Wyo.1996). "Proof of any one of those [bases] by clear and convincing evidence supports the termination of parental rights." *SLJ v. Wyoming Dept. of Family Servs.*, 2005 WY 3, ¶ 32, 104 P.3d 74, 82 (Wyo.2005). We affirm the district court's decision under the first statutory subsection discussed above, so there is no reason to consider the second. *See JD and SE v. Wyoming Dept. of Family Servs.*, 2009 WY 78, ¶ 12, 208 P.3d 1323, 1327 (Wyo.2009).