# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 18

### OCTOBER TERM, A.D. 2020

**February 1, 2021**

IN THE INTEREST OF: AA, a minor
child,

RA,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-20-0093

*Appeal from the District Court of Albany County*
The Honorable Tori R.A. Kricken, Judge

*Representing Appellant:*
    Jennifer K. Stone, Winn & Stone, P.C., Laramie, Wyoming.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney
    General; Jill E. Kucera, Senior Assistant Attorney General; Allison E. Connell,
    Assistant Attorney General.  Argument by Ms. Connell.

*Representing Guardian ad Litem:*
    Dan S. Wilde, Deputy Director, Office of the Guardian ad Litem; Joseph R. Belcher,
    Chief Trial and Appellate Counsel; Elizabeth Dinkel, UW Law School Extern.
    Appearance by Mr. Belcher.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   RA (Father) appeals from the juvenile court's order relieving the State of Wyoming's Department of Family Services (DFS) from its statutory responsibility to make reasonable efforts to reunify him with AA (Child).  Father asserts the juvenile court violated his right to due process during the early stages of the child protection action and abused its discretion when it determined reasonable reunification efforts were unnecessary.

[¶2]   We reverse and remand for proceedings consistent with this opinion.

## ISSUES

[¶3]   The issues on appeal are:

I.   Did the juvenile court violate Father's due process rights when it proceeded with the child protection action without providing Father notice and an opportunity to be heard?

II.   Did the juvenile court abuse its discretion when it determined, pursuant to Wyo. Stat. Ann. § 14-2-309(c)(v) (LexisNexis 2019), DFS was not required to make reasonable efforts to reunify Father and Child?

## FACTS

[¶4]   Child was born in 2014 to Father and RK (Mother).  For the first two years of Child's life, she lived with Father, Mother, and Mother's other children.  Father and Mother separated in 2017.  Near the time of their separation, Mother obtained a protection order prohibiting Father from having contact with her or Child.  Father was, however, able to have the order modified so he could have visitation with Child.

[¶5]   On March 4, 2017, Child was in Father's custody for visitation when the State removed her and placed her into protective custody because Mother admitted she was using methamphetamine.  The State alleged Mother had neglected Child, and the juvenile court ordered Child be held in shelter care.  Because there were no neglect or abuse allegations against Father in the 2017 case, the juvenile court refused to appoint counsel for him.[1]  The court ordered Father to test negative for drugs before visiting Child; he did not complete the required tests.  Child was returned to Mother's care in April 2017, but Father still did not exercise visitation.  In 2018, Father was incarcerated for felonious restraint of a victim not involved in this case.  Father was released from custody in May 2019 and moved into his mother's house in Laramie.

---

[1] We have since ruled non-offending parents are entitled to counsel in juvenile court proceedings.  *FH v. State (In re ECH)*, 2018 WY 83, ¶ 29, 423 P.3d 295, 304 (Wyo. 2018).

[¶6] On November 26, 2019, Child was again taken into protective custody because Mother had been arrested for physically abusing Child's older brother and could not care for Child. The juvenile court held a shelter care hearing on November 27, 2019, without Father present, and found Child should be placed in DFS custody. Although the State knew Father's address, it did not serve him with notice of the hearing. Twenty-three (23) days later, the State filed a motion for an order that reasonable efforts to reunify Child with Father were not required.

[¶7] On December 23, 2019, Father was personally served with 1) the neglect petition against Mother; and 2) an order directing him to appear in the juvenile court on January 2, 2020, for an initial hearing. The juvenile court appointed counsel for Father, and he filed an objection to the State's motion requesting the court order reasonable efforts to reunify him with Child were unnecessary. Father agreed to a case plan which required, among other things, drug testing. Father complied with the testing requirement and began weekly supervised visitation with Child.

[¶8] After a two-day evidentiary hearing, the juvenile court granted the State's motion to relieve DFS of the duty to make reasonable efforts to reunify Father and Child. Father filed a timely notice of appeal. We will provide additional details about the facts and course of proceedings as necessary to decide the issues in this appeal.

## DISCUSSION

*Due Process*

[¶9] Father claims the juvenile court violated his right to due process by failing to provide him notice and the opportunity to be heard during the early stages of the child protection action.[2] The question of whether an individual was afforded due process is one of law subject to de novo review. *ST v. State (In re DT),* 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017); *Verheydt v. Verheydt,* 2013 WY 25, ¶ 20, 295 P.3d 1245, 1250 (Wyo. 2013).

[¶10] The State maintains we should not consider Father's due process claim because he did not object to the procedure employed by the juvenile court. "Normally, we will not consider an issue raised for the first time on appeal, but we have recognized two exceptions to this rule: when the issue raises jurisdictional questions or when the issue is of such a fundamental nature that it must be considered." *FH v. State (In re ECH)*, 2018 WY 83, ¶ 21, 423 P.3d 295, 302 (Wyo. 2018) (citations and quotation marks omitted).

---

[2] Father also argues he was denied his right to counsel; however, he admits the juvenile court appointed him counsel prior to his initial hearing. We conclude the juvenile court violated Father's right to due process by failing to provide reasonable notice and a meaningful opportunity to be heard in the early stages of the child protection action. Consequently, we will not separately address Father's argument regarding his right to counsel.

[¶11]   The right of familial association is fundamental.  *Clark v. Dep't of Family Servs. (In re GGMC),* 2020 WY 50, ¶ 22, 460 P.3d 1138, 1145 (Wyo. 2020); *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010); *TF v. State, Dep't of Family Servs. (In re Adoption of CF),* 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005).  "The liberty of a parent to the care, custody and control of [his] child is a fundamental right that resides first in the parent."  Wyo. Stat. Ann. § 14-2-206(a) (LexisNexis 2019).  *See also, Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (the due process clause protects parents' rights to raise their children); *Santosky v. Kramer,* 455 U.S. 745, 760, 102 S.Ct. 1388, 1398, 71 L.Ed.2d 599 (1982) ("the child and his parents share a vital interest in preventing erroneous termination of their natural relationship").

[¶12]   According to the State, Father's fundamental interest in preserving his familial relationship with Child has not been affected in an impermissible way because the juvenile court did not change the permanency plan to termination of parental rights and/or adoption. Unquestionably, termination of parental rights affects the fundamental right to familial association.  *Clark,* ¶ 22, 460 P.3d at 1145 (citing *JLW,* ¶ 17, 224 P.3d at 19).  However, decisions leading up to termination may also affect a parent's fundamental rights.  In *FH,* ¶ 21, 423 P.3d at 302, we stated, "[t]he decision to halt reunification efforts certainly affects a parent's substantial rights, as it will likely have a significant impact on a termination decision." (Citation omitted).  In fact, the provision the State relied upon when requesting the juvenile court relieve DFS of the duty to make reasonable efforts to reunify Father with Child is included within  § 14-2-309 – the statute setting out the procedure for termination of parental rights.

[¶13]   We ruled in *FH,* ¶ 21, 423 P.3d at 302,  the "right to counsel in a permanency hearing where cessation of reunification efforts has been recommended is a matter of such fundamental nature that we must consider it even though it was not raised below."  Given the close connection between procedures required in the early stages of a child protection action and the cessation of reunification efforts, the issue of whether the juvenile court violated Father's due process right is of a fundamental nature.  *Cf. Crofts v. State ex rel. Dep't of Game & Fish,* 2016 WY 4, ¶ 32, 367 P.3d 619, 627 (Wyo. 2016) (appellant's claim she was not afforded procedural due process was not of a fundamental nature because she did not establish a protected property or liberty interest).  We will, therefore, consider Father's argument that he was deprived of due process in the juvenile proceedings even though it was not raised below.

[¶14]   However, because Father did not address this issue to the juvenile court, our review is limited to a search for plain error.  Wyoming Rule of Appellate Procedure (W.R.A.P.) 9.05; *FH*, ¶ 21, 423 P.3d at 302; *KC v. State,* 2015 WY 73, ¶ 47, 351 P.3d 236, 248 (Wyo. 2015).

> Plain error occurs when "1) the record is clear about the
> incident alleged as error; 2) there was a transgression of a clear

3

and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." The appellant bears the burden of proving plain error.

*ST,* ¶ 23, 391 P.3d at 1143 (quoting *SAS v. State, Dep't of Family Servs. (In re AGS),* 2014 WY 143, ¶ 34, 337 P.3d 470, 480 (Wyo. 2014)) (other citations and quotation marks omitted).

[¶15]   The first part of the plain error test is satisfied because the record clearly reflects the course of proceedings.  The second part of the test requires a showing of a violation of a clear and unequivocal rule of law.  The Fifth and Fourteenth Amendments to the United States Constitution prohibit the government from depriving any person of "life, liberty, or property, without due process of law."  *See also,* Wyo. Const. art. 1, § 6 ("No person shall be deprived of life, liberty or property without due process of law.").  Procedural due process requires the government to provide a parent with reasonable notice and a meaningful opportunity to be heard before interfering with his fundamental right to familial association.  *JA v. State, Dep't of Family Servs. (In re DSB),* 2008 WY 15, ¶ 27, 176 P.3d 633, 639 (Wyo. 2008); *DH v. Dep't of Family Servs. (In re "H" Children),* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003).  The required process varies depending upon "the nature of the proceeding and interests involved."  *KC,* ¶ 32, 351 P.3d at 2455.

[¶16] The Child Protection Act (CPA) establishes procedures for protecting the fundamental right of familial association while guarding the health and safety of children. Wyo. Stat. Ann. §§ 14-3-401- 441 (LexisNexis 2019).  Our focus in this matter is upon the statutory procedures required in the early stages of a child protection case.

[¶17]   "When interpreting . . . statute[s] and [their] application, we first look at the plain language used by the legislature.  If the [statutory language] is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning."  *DB v. State (In re CRA),* 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016) (citing *MR v. State (In re CDR),* 2015 WY 79, ¶ 19, 351 P.3d 264, 269 (Wyo. 2015)).

> To accomplish this objective, "we construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. . . . When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction."

4

*GS v. State (In re VS),* 2018 WY 119, ¶ 41, 429 P.3d 14, 26 (Wyo. 2018) (quoting *TW v. State (In re JB),* 2017 WY 26, ¶ 12, 390 P.3d 357, 360 (Wyo. 2017)) (other citations omitted).

[¶18]   As relevant here, § 14-3-405(a) permits a law enforcement officer to take a child into temporary protective custody without a warrant or court order and without consent of the parents if:

> (i) [t]here are reasonable grounds to believe a child is abandoned . . . or seriously endangered by the child's surroundings and immediate custody appears to be necessary for his protection; . . . [or]
>
> (iii) [t]he child is as evidenced by an examination being abused or neglected by a parent, guardian or legal custodian[.]

*See also, KC,* ¶ 20, 351 P.3d at 242.   When a child is taken into protective custody, the child's parents must be notified as soon as possible.   Section 14-3-406(b).   Under § 14-3-406(a) and (b), a person taking a child into protective custody must release the child to her parent unless shelter care is necessary to protect the child's person or provide a child "having no parent . . . with supervision and care[.]"

[¶19]   Section 14-3-208(a)(iii) states:

> (a) When a child is taken into temporary protective custody pursuant to W.S. 14-3-405(a) . . . [t]he local department of family services office shall: . . .
>
> (iii) Arrange for care and supervision of the child in the most appropriate and least restrictive setting necessary to meet the child's needs[.] . . . *When it is in the best interest of the child, the department shall place the child with the child's noncustodial birth parent or with the child's extended family,* including adult siblings, grandparents, great-grandparents, aunts or uncles.

(Emphasis added).   Section 14-3-409(a) requires the juvenile court to conduct a shelter care hearing within 48 hours after the child is taken into temporary protective custody to determine whether the child should be kept in shelter care pending further court action. "Written notice stating the time, place and purpose of the hearing *shall* be given to the child and to his parents, guardian or custodian."   *Id.* (emphasis added).   Shelter care is required if "returning the child to the home is contrary to the welfare of the child[.]"   Section 14-3-409(d).   The court may, in proper cases, place the child with the non-custodial parent or

his family and require continuing supervision by DFS and/or "[i]mpose any other terms and conditions of release [from protective custody] deemed reasonably necessary" to protect the child from harm. Section 14-3-409(d)(i) & (ii). *See also,* § 14-3-405(e) ("When necessary for the best interest or welfare of the child in temporary protective custody, a court may order medical or other necessary health care, including mental health and substance abuse care, notwithstanding the absence of a prior finding of child abuse or neglect.").

[¶20] If the State determines "the best interest of the child requires judicial action, it will file a petition alleging abuse or neglect." *KC,* ¶ 20, 351 P.3d at 242 (citing §§ 14-3-408, 409(a), 412). Section 14-3-413(a) requires the juvenile court to order the parents to appear at an initial hearing. *See also,* § 14-3-426(a). Under § 14-3-414(a) and (b), the parent must be personally served with the order to appear and the petition. The juvenile court may conduct the initial hearing simultaneously with or subsequent to the shelter care hearing. Section 14-3-426(a). *See also, KC,* ¶ 20, 351 P.3d at 242 (generally describing the relationship between shelter care and initial hearings). Section 14-3-413(d)(v) states a noncustodial parent who has not had his parental rights terminated and is not alleged to have abused or neglected the child *shall* be notified he may be considered for possible placement of the child.

[¶21] The CPA clearly requires a noncustodial parent be given timely notice of the juvenile court proceedings and an opportunity to be heard regarding the placement of the child. Many of those requirements were not followed in this case. Father was not informed when Child was taken into protective custody on November 26, 2019, or of the shelter care hearing the next day, as required by §§ 14-3-406(b) and 14-3-409(a). This was true even though the shelter care hearing report, which was signed by DFS personnel on the day Child was taken into protective custody, identified Father and listed his address.

[¶22] The State points out that § 14-3-414(e) allows a juvenile court to continue a child in shelter care even though a parent has not been served. That provision states:

> (e) When personal service of order to appear is made within the state, service shall be completed not less than two (2) days before the hearing[.] . . . However, *notwithstanding any provision within this act, the court may order that a child be taken into custody as provided in W.S. 14-3-413 or that a child be held in shelter care pending further proceedings as provided in W.S. 14-3-409, even though service of order to appear on the parents, guardian or custodian of the child is not complete at the time of making the order.*

Section 14-3-414(e) (emphasis added).

6

[¶23] When interpreted in harmony with the remainder of the CPA, § 14-3-414(e) did not absolve the State of its obligation to give Father notice of the proceedings or the juvenile court of its obligation to give Father the opportunity to be heard on Child's shelter care and/or placement. DFS stated in the shelter care hearing report it had not had time to contact Father, even though it had his contact information and he lived in Laramie, where the shelter care hearing occurred. It is inconsistent with the CPA and due process to allow the State to circumvent the requirements for notifying a noncustodial parent because it did not have "time to contact" the parent. While the juvenile court could order the child remain in shelter care until Father was served, under the circumstances of this case, it was obligated to enforce the notification requirements and to revisit the issue once Father was properly notified.

[¶24] The juvenile court's shelter care order did not mention Father, and Child was placed in "non-relative foster care." Consequently, it is safe to assume Father and his family were not considered by the State or the juvenile court as options for Child's placement. This was contrary to § 14-3-208(a)(iii), which requires placement of a child with the noncustodial parent or other family members if it is in the child's best interest. We recognized in *LW v. State, Dep't of Family Servs. (In re JW),* 2010 WY 28, ¶ 27, 226 P.3d 873, 881 (Wyo. 2010), that "as a matter of ageless tradition, as a matter of federal law, and as a matter of Wyoming law," there is a "compelling preference" for placement with nuclear or extended family members.

[¶25] The State did not personally serve Father with the petition or the order setting his initial hearing until December 23, 2019, nearly a month after the proceedings began and DFS knew his whereabouts. Father was appointed counsel and appeared at the initial hearing on January 2, 2020. By this time, however, the State had already filed a motion to relieve DFS of its obligation to make reasonable efforts to reunify him with Child. The CPA expresses the clear and unequivocal rule of law that the juvenile court shall involve the noncustodial parent in the proceedings at the earliest possible time. The CPA and our precedent establish the State and juvenile court were required to consider placement with Father and/or Child's extended family. Father's right to due process of law was violated by the numerous failures to follow the CPA.

[¶26] Turning to the final part of the plain error test, Father must demonstrate he was materially prejudiced by the due process violations. *FH,* ¶ 32, 423 P.3d at 305. To establish material prejudice, there must be a reasonable possibility that, "'absent the error, the appellant may have enjoyed a more favorable outcome.'" *Id.*, ¶ 33, 423 P.3d at 305 (quoting *Schreibvogel v. State,* 2010 WY 45, ¶ 26, 228 P.3d 874, 884 (Wyo. 2010)).

[¶27] The State maintains Father was not materially prejudiced. It asserts his fundamental right to familial association was not violated because only Mother was alleged to have neglected Child and he still retains his parental rights. The State does not explain how the fact it did not file a neglect or abuse petition against Father makes the circumstances less

7

prejudicial. In truth, the State's and juvenile court's actions in this case exacted the same consequences against him as if a petition had been filed, without giving him the protections due under the CPA.

[¶28] By the time Father was given proper notice of the juvenile proceeding, the State had already filed a motion for DFS to be absolved of making reasonable efforts to reunify him and Child. As we stated above, cessation of reunification efforts affects a parent's right to associate with his children. *FH*, ¶ 21, 423 P.3d at 302 (citing *KC,* ¶ 38, 351 P.3d at 246). Providing a parent an early opportunity to participate in a juvenile case is important "'[b]ecause termination proceedings are largely based on the parent's conduct from the time the child is taken into custody until the court decides further assistance to the parent is futile[.]'" *FH,* ¶ 32, 423 P.3d at 305 (quoting *KC,* ¶ 37, 351 P.3d at 246) (other citations omitted).

[¶29] The State maintains Father was not prejudiced by the due process violations because, once joined in the case, he could have filed a motion under § 14-3-409(f). That provision states: "If a child is not released after a shelter care hearing and it appears by sworn statement of the parents, guardian or custodian that they did not receive notice and did not waive notice and appearance at the hearing, the court shall rehear the matter without delay." *Id.* Certainly, that was an avenue available to Father.

[¶30] Father was, however, at a disadvantage by the time he joined the case. Child had been in foster care for nearly a month and the State had already filed a motion to cease reunification efforts. Because Child was in DFS custody, DFS had the authority to determine how much, if any, contact Father and his extended family had with her.

[¶31] Father's lack of involvement in the juvenile court action and lack of contact with Child necessarily colored the court's determination that it was appropriate to release DFS from its obligation to reunite the family. The juvenile court referred to the relatively few visits Father had with Child as a basis for ruling DFS was not required to make reasonable efforts to reunify Father and Child. However, the DFS caseworker testified Father had visited Child weekly after he was notified of his right to participate in the case and the visits were going "very well." Had he been notified when DFS filed the neglect petition against Mother and took Child into custody, it is possible he could have attended visitation for several additional weeks. He also could have asserted his ability to care for Child before DFS and the court set the course on non-family placement. Under the circumstances of this case, Father was materially prejudiced by the many due process violations.

### *Reasonable Efforts to Reunify the Family*

[¶32] The juvenile court ruled DFS was not required under § 14-2-309(c)(v) to make reasonable efforts to reunify Father with Child because the State had proven by clear and

convincing evidence "[o]ther aggravating circumstances exist indicating that there is little likelihood that services to the family will result in successful reunification."

> Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of a contention is highly probable. Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.

*Dunlap v. State, Dep't of Family Servs. (In re BAD),* 2019 WY 83, ¶ 14, 446 P.3d 222, 225 (Wyo. 2019) (quoting *SAS v. State, Dep't of Family Servs. (In re AGS,)* 2014 WY 143, ¶ 19, 337 P.3d 470, 477 (Wyo. 2014)).

[¶33]  Typically, the issue of whether DFS may cease reunification efforts arises in the context of a juvenile court's order to change a child's permanency plan from family reunification to termination of parental rights or adoption.  *See, e.g., GS,* ¶ 38, 429 P.3d at 25; *KC,* ¶ 18, 351 P.3d at 242.  This Court applies an abuse of discretion standard to review such decisions.  *Id.*.

> In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances.

*MMM v. AMMJ,* 2018 WY 60, ¶ 10,  419 P.3d 490, 493 (Wyo. 2018) (quoting *PM v. State (In re SO),* 2016 WY 99, ¶ 11, 382 P.3d 51, 54 (Wyo. 2016)) (other citations and quotation marks omitted).

[¶34]  Melding the two standards together, we must determine whether the juvenile court abused its discretion by concluding the State proved by clear and convincing evidence aggravating circumstances exist making it unlikely that providing services to Father and Child would result in their reunification.  *See MMM,* ¶ 12, 419 P.3d at 493 (addressing the issue of whether the district court abused its discretion by finding the potential adoptive parents had failed to prove by clear and convincing evidence the mother had willfully abandoned the child).  *See also, Stroble v. State,* 2020 WY 158, ¶ 12, __ P.3d ___ (Wyo. 2020) (melding the abuse of discretion standard of review with the preponderance of the evidence standard of proof in a probation revocation case).

9

[¶35] Under the CPA, DFS is required to make reasonable efforts to preserve and reunify families, except as provided by § 14-2-309(b) or (c). Section 14-3-440. Section 14-2-309(c) states:

> (c) Notwithstanding any other provision of this section, evidence that reasonable efforts have been made to preserve and reunify the family is not required in any case in which the court determines any one (1) or more of the following by clear and convincing evidence:
>
> > (i) The parental rights of the parent to any other child have been terminated involuntarily;
>
> > (ii) The parent abandoned, chronically abused, tortured or sexually abused the child;
>
> > (iii) The parent has been convicted of committing one (1) or more of the following crimes against the child or another child of that parent:
>
> > > (A) Sexual assault under W.S. 6-2-302 through 6-2-304;
>
> > > (B) Sexual battery under W.S. 6-2-313;
>
> > > (C) Sexual abuse of a minor under W.S. 6-2-314 through 6-2-317.
>
> > (iv) The parent is required to register as a sex offender pursuant to W.S. 7-19-302 if the offense involved the child or another child of that parent. This shall not apply if the parent is only required to register for conviction under W.S. 6-2-201;
>
> > (v) Other aggravating circumstances exist indicating that there is little likelihood that services to the family will result in successful reunification.

[¶36] Before we discuss the evidence in this case, we must determine what is meant by "other aggravating circumstances" in § 14-2-309(c)(v) by applying the rules of statutory interpretation we discussed above. We start with the plain meaning of the statutory language. *DB,* ¶ 16, 368 P.3d at 298. The clear and obvious meaning of "other" is something "distinct . . . from those first mentioned." https://www.merriam-webster.com/dictionary/other. "Aggravate" means "to make worse, more serious, or more

severe." https://www.merriam-webster.com/dictionary/aggravate. An "aggravating circumstance" is "a circumstance relating to the commission of an act that increases the degree of liability or culpability." https://www.merriam-webster.com/legal/aggravatingcircumstance.

[¶37] Under these clear definitions, the "other . . . circumstances" in subsection (v) must be different from those listed in the other provisions of § 14-2-309(c) and serious enough to warrant the degree of culpability or liability imposed. Father's liability was the loss of reunification efforts, which, as we said above, has a significant impact on his fundamental right to associate with Child. Subsections (i) through (iv) describe serious wrongs perpetrated by a parent against his children. Interpreting subsection (v) in harmony with the other provisions of § 14-2-309(c), the legislature logically meant for "other aggravating circumstances" to meet the same level of severity as set out in the preceding provisions.

[¶38] The juvenile court's conclusion that the State had proven by clear and convincing evidence "other aggravating circumstances" making it unlikely services to the family would result in reunification was based upon the following findings, which we summarize:

- Father was only involved in Child's life for the two years after she was born.

- Once Father and Mother separated, Father had little contact with Child until he began visitation in this proceeding.

- While Father was living with Child, the parent-child relationship was "marred by drug use [and] domestic violence."

- Mother had obtained protection orders against Father for domestic violence.

- DFS had, in the 2017 child protection case, attempted to reunify Father and Child, but "[t]hose attempts failed due to [Father's] inability or unwillingness to take the affirmative steps [i.e., drug tests] needed to participate in [Child's] life."

- The juvenile court "heard significant evidence of [Father's] anger and violence -- directed both at multiple romantic partners and at the minor children involved in this case. [Father] attempted, at every juncture, to minimize the domestic violence and his role in it."

[¶39] Clearly, Father is not a model parent. However, the facts of this case do not establish severe misconduct toward Child which would warrant relieving DFS from its obligation to make reasonable efforts to reunite the family.[3] The juvenile court's reliance on Father's

---

[3] The guardian ad litem filed a brief in support of Father, asserting the juvenile court erred when it ruled DFS was not required to make reasonable efforts to reunify Father and Child.

absence from Child's life is puzzling given it found, at the same hearing, the State had not proven he had abandoned Child under § 14-2-309(c)(ii).

[¶40] While Mother testified to Father's domestic abuse of her and her older children and one instance of excessive swatting of Child, there was no evidence he was convicted of any crimes or charged with abuse under the CPA for those actions. The other subsections of § 14-2-309(c) which address parental violence require either criminal convictions for abuse of the parent's own children or clear and convincing evidence of "chronic abuse" of the child to justify wholly relieving DFS of its obligation to make reasonable reunification efforts. Logically, something more significant than that described by Mother, which did not result in any CPA or criminal charges, would be required to satisfy § 14-2-309(c)(v).

[¶41] The juvenile court also referred to Father's prior drug use and his refusal to take drug tests in the 2017 CPA case as a basis for finding aggravating circumstances. Drug use is a common issue for parents involved in child protection cases and frequently forms part of the basis for an allegation of neglect or abuse. *See, e.g., DH,* ¶ 59, 79 P.3d at 1013; *DL v. State, Dep't of Family Servs. (In re MC),* 2013 WY 43, ¶¶ 57-59, 299 P.3d 75, 87 (Wyo. 2013). However, Father was never charged with abuse or neglect of Child.

[¶42] Furthermore, helping addicted parents with drug problems is often part of the reasonable efforts made by DFS to achieve family reunification. *TMC v. State, Dep't of Family Servs. (In re ARC),* 2011 WY 119, ¶¶ 17-18, 258 P.3d 704, 709 (Wyo. 2011); *MDW v. Hot Springs Cnty. Dep't of Family Servs., (In re SRJ),* 2009 WY 94, ¶ 7, 212 P.3d 611, 613 (Wyo. 2009). Drug use alone is not a basis for a wholesale refusal to make reasonable efforts. *See generally, State, Dep't of Family Servs. v. TWE (In re ATE),* 2009 WY 155, ¶ 21, 222 P.3d 142, 147 (Wyo. 2009) (recognizing in a termination of parental rights case that a parent's drug use does not per se pose a risk to the children's health and safety). The CPA provides safeguards the juvenile court can employ if it is worried about how a parent's drug use may affect the welfare of the child. For example, under §§ 14-3-405(e) and 14-3-409(d)(i) and (ii), the juvenile court may impose conditions upon a parent to protect the child. *See also, CP v. State, Dep't of Family Servs. (In re NDP),* 2009 WY 73, ¶ 23, 208 P.3d 614, 619 (Wyo. 2009) (reunification conditioned upon the mother completing substance abuse treatment); *TW v. State (In re JW),* 2018 WY 22, ¶ 10, 411 P.3d 422, 424 (Wyo. 2018) (juvenile court ordered the father to complete substance abuse treatment). Further, while the evidence showed Father did not participate in the 2017 case, the undisputed evidence in this case showed he was taking drug tests and following the case plan so he could have visitation with Child.

[¶43] The juvenile court analogized to *GS,* 2018 WY 119, 429 P.3d 14, in concluding reunification attempts were unnecessary in this case. In *GS,* we held the juvenile court did not abuse its discretion when it changed the permanency plan from family reunification to adoption without requiring DFS to make reasonable efforts to reunify the child with the

father, GS. *Id.,* ¶¶ 1-2, 429 P.3d at 18. The circumstances of *GS* differ significantly from the present case.

[¶44] GS had never met the child and had been in prison for most of the child's life. *Id.,* ¶ 48, 429 P.3d at 27. The evidence before the juvenile court showed GS had no relationship of any sort with the child. *Id.,* ¶ 52, 429 P.3d at 28. Nevertheless, DFS tried to involve him in the juvenile case by looking for a suitable placement for the child within his family. *Id.,* ¶ 48, 429 P.3d at 27. In contrast, Father lived with Child for the first two years of her life and they were becoming reacquainted when the juvenile court ordered reunification efforts were not required. Moreover, as we discussed fully above, the State did not comply with its obligation to consider Father and/or his family for placement of Child.

[¶45] Under the circumstances presented here, the juvenile court abused its discretion by concluding the State had proven by clear and convincing evidence that aggravating circumstances existed which would make reunification between Father and Child unlikely.

## CONCLUSION

[¶46] The juvenile court violated Father's right to due process of law by failing to give him reasonable notice and a meaningful opportunity to be heard early in the child protection action. Additionally, the court abused its discretion when it ruled DFS was not required to make reasonable efforts to reunify Child with Father.

[¶47] Reversed and remanded for proceedings consistent with this decision.

13