# THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 68

APRIL TERM, A.D. 2026

June 23, 2026

IN THE INTEREST OF: AC and BI
minor children,

AI,

Appellant
(Respondent),

v.                                                                    S-25-0281

THE STATE OF WYOMING,

Appellee
(Petitioner).

*Appeal from the District Court of Platte County*
*The Honorable Edward A. Buchanan, Judge*

*Representing Appellant:*
Brittany Thorpe of Thorpe Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
Keith G. Kautz, Attorney General; Christina F. McCabe, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General; Rebekha K. Dostal, Senior Assistant Attorney General.

*Guardian ad Litem:*
Joseph R. Belcher, Director, and Kimberly Skoutary Johnson, Chief Trial and Appellate Attorney, of the Wyoming Office of Guardian ad Litem.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    AI (Mother), who appeared pro se below, was adjudicated to have neglected her minor children.  On appeal, she contends the juvenile court violated her due process rights by denying her a meaningful opportunity to be heard when it did not invite her to present opening and closing statements or cross-examine witnesses during their initial testimony. We affirm.

## ISSUE

[¶2]    Mother raises a single issue on appeal, which we rephrase as follows: Did the juvenile court commit plain error by failing to afford Mother the opportunity to present opening and closing statements and to cross-examine witnesses during their initial testimony?

## FACTS

[¶3]    Mother has primary custody of her three children: JC,[1] AC, and BI.  JC and AC share the same biological father, JC (Father), while BI has a different biological father.  On June 23, 2025, at approximately 10:15 a.m., Mother contacted law enforcement regarding concerns involving Father and two of the children who were in Father's care at the time, AC and BI.  Mother reported the children were with Father at a Motel 6 and voiced concerns for their safety, stating Father had been using methamphetamine by injecting it into his neck.  Mother also stated she feared Father would take the children and not return them to her.

[¶4]    An investigating officer responded to Mother's location and spoke with her.  During the conversation, he observed Mother acting erratically and noted her thoughts were not entirely coherent.  He further observed Mother's emotions rapidly shift from "normal, to laughing, to being very aggressive, angry, and crying[.]"  Based on his training and observations, the officer suspected Mother was under the influence of methamphetamine or another substance.

[¶5]    After speaking with Mother, the officer went to Motel 6 to speak with Father.  Father showed the officer text messages Mother had sent him and expressed concern about Mother's mental health.   The officer reviewed the text messages, which included statements such as, "My death is on your hands," and "I want to kill you."  During the officer's conversation with Father, he also began to suspect Father was "coming down off of [a] high."  Because of concerns regarding methamphetamine use around the children, the officer requested Father submit to a urinalysis (UA).  Father agreed, and the UA

---

[1]JC was dismissed from the action after having reached the age of majority.

returned a presumptive positive for methamphetamine. Father admitted to the officer he had used methamphetamine approximately three days earlier.

[¶6] Once the officer finished speaking with Father, he returned to Mother's location and asked her about the mental-health concerns Father had raised and whether she would submit to a UA. Mother initially agreed to submit to a UA and followed the officer to the Department of Family Services' (DFS) office so a female caseworker could supervise the UA. Once there, however, Mother became reluctant and ultimately did not submit to a UA. Mother later admitted she had relapsed the night before by smoking methamphetamine from a pipe she found in Father's bedroom.

[¶7] Based on Father's presumptive positive UA test, Mother's and Father's admissions to recent methamphetamine use, and the officer's personal observations of Mother and Father, the officer placed the children into protective custody. A DFS caseworker took the children to an outside provider for hair-follicle testing, consistent with standard practice in cases involving controlled substances. AC and BI tested positive for methamphetamine, amphetamine, and marijuana.

[¶8] On June 25, 2025, the State filed a petition against Mother and Father, alleging they neglected the children by failing or refusing to provide adequate care, maintenance, supervision, education or other necessary care for the children's well-being. A shelter care and initial hearing was held that same day. At the hearing, the juvenile court informed Mother and Father of their rights, including their right to appointed counsel if they were financially eligible and their right to an evidentiary hearing. The juvenile court explained they would need to complete financial affidavits for the court to determine eligibility for court-appointed counsel, but they were also free to retain private counsel. The juvenile court further advised them both of their rights to a jury trial, to confront and cross-examine witnesses, present evidence, and remain silent. Both Mother and Father confirmed they understood their rights and had no questions.

[¶9] After acknowledging their understanding of their rights, Mother and Father denied the allegations in the petition. Following those denials, the juvenile court again informed Mother and Father of the process for obtaining court-appointed counsel and reiterated completion of the financial affidavits was required before counsel could be appointed. The proceedings then turned to the issue of continued shelter care for the children, and Mother and Father stipulated to its continuation.

[¶10] On August 12, 2025, the juvenile court held an adjudicatory hearing. Father appeared with counsel; Mother appeared pro se. The State expressed concern Mother remained unrepresented, and the juvenile court inquired into whether Mother wished to proceed without counsel. Mother stated she understood she had a time limit to obtain an attorney before the hearing, but she had been unable to return the paperwork because she

2

was staying at the lake and lacked transportation. She stated she still wanted the opportunity to obtain counsel but would proceed if unable to do so.

[¶11] The juvenile court found Mother knew she had the right to appointed counsel if she could not afford one and understood she needed to complete the required paperwork. The juvenile court noted that five to six weeks had passed since Mother was informed of the appropriate steps to obtain a court appointed attorney. It concluded Mother "had ample opportunity to turn in the paperwork had she chosen to do so and, if nothing else, could have informed the [c]ourt that she had some type of logistical challenges with where she was living or transportation or those types of things, and the [c]ourt could have considered something at that time." Because of the statutory timelines applicable to juvenile proceedings, the juvenile court proceeded with the adjudicatory hearing.

[¶12] During the hearing, the juvenile court asked Father's counsel, the State, and the guardian ad litem if they wished to give opening or closing statements but did not specifically invite Mother to make either statement. During the State's case-in-chief, the investigating officer and the DFS caseworker testified. The guardian ad litem presented no witnesses, and Father's counsel called Father to testify. Following each witness's testimony, the juvenile court did not offer Mother the opportunity to cross-examine the witness, while permitting the State, guardian ad litem, and Father's counsel to do so. After Father's counsel concluded Father's case, however, the juvenile court asked Mother if she "wish[ed] to call any witnesses or question any of the witnesses [who] . . . previously testified." Mother declined. The juvenile court also asked whether she wished to testify on her own behalf and reiterated that she could recall or question any prior witness and present witnesses of her own. The juvenile court advised Mother for a third time that she could question any previous witness, including the investigating officer. Mother indicated she wished to testify and stated she had no need to question the investigating officer. Mother gave a brief statement, after which Father's counsel, the State, and the guardian ad litem were permitted to cross-examine her.

[¶13] At the conclusion of the adjudicatory hearing, the juvenile court found the State proved by a preponderance of the evidence both Mother and Father "failed to provide adequate care, maintenance, and supervision, or other necessary care for their children," because, considering the totality of the circumstances, the children had been exposed to methamphetamine and tested positive for it. On August 18, 2025, the juvenile court entered its written order and held Mother and Father neglected AC and BI as defined by Wyoming Statute § 14-3-402(a)(xii) (2023). Mother timely appealed.

## DISCUSSION

[¶14] Mother contends the juvenile court violated her due process rights during the adjudicatory hearing by not allowing her a meaningful opportunity to be heard. Specifically, she claims the juvenile court denied her a meaningful opportunity to be heard

by not allowing "[her] an opportunity to present an opening statement or closing argument" and not giving her "an opportunity to cross-examine witnesses during their initial testimony."

[¶15] "The question of whether an individual was afforded constitutional due process is one of law, which, when properly preserved, we review de novo." *In re RR*, 2021 WY 85, ¶ 88, 492 P.3d 246, 268 (Wyo. 2021) (citing *In re NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377 (Wyo. 2020)). Here, however, Mother did not properly preserve her due process claim by raising the issue before the juvenile court. Accordingly, our review is limited to plain error. *See* W.R.A.P. 9.05 (2023) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [juvenile] court."); *In re AA*, 2021 WY 18, ¶¶ 10–14, 479 P.3d 1252, 1256–57 (Wyo. 2021) (applying plain-error review to unpreserved due process claims concerning notice and the opportunity to be heard because procedures in the early stages of a child protection action may affect a parent's fundamental right to familial association).

> Plain error occurs when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice.

*In re AA*, ¶ 14, 479 P.3d at 1257 (quoting *In re DT*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017)). Mother bears the burden of proving plain error. *In re SK*, 2024 WY 25, ¶ 40, 544 P.3d 606, 617 (Wyo. 2024).

[¶16] The first element of the plain error test is satisfied because the record clearly shows the juvenile court did not afford Mother the opportunity to present opening or closing statements and did not initially invite her to cross-examine witnesses. The juvenile court, however, remedied those omissions, when it asked Mother if she "wish[ed] to call any witnesses or question any of the witnesses [who] . . . previously testified[.]" The juvenile court reiterated three times that Mother could question any witness who had previously testified and specifically offered to recall the investigating officer for examination by Mother, but Mother stated that doing so was unnecessary. The juvenile court further explained to Mother:

> THE COURT: There's a couple options you have. You're free to testify on your own behalf, if you would like. What you need to know about that is, in doing so, you'd give up the right to remain silent, because you'll be placed under oath. And, further, you'd be subject to cross-examination by the other parties in this case. That's number one. But the second thing you can do is -- I'm happy to have you re-call any of the

4

witnesses [who] were called or any witnesses other than yourself that you may wish to call and ask them questions.

Mother indicated she wished to make a statement, whereupon the juvenile court placed her under oath and informed her that she could make any statement she wished. Mother then gave a brief statement.

[¶17] "Procedural due process requires the government to provide a parent with reasonable notice and a meaningful opportunity to be heard before interfering with [her] fundamental right to familial association." *In re AA*, 2021 WY 18, ¶ 15, 479 P.3d at 1257. Under the Child Protection Act, a parent at an adjudicatory hearing involving allegations of child abuse or neglect has the right to "[c]onfront and cross-examine adverse witnesses" and to "[i]ntroduce evidence, present witnesses and otherwise be heard in [her] own behalf[.]" Wyo. Stat. Ann. 14-3-423(a) (2023). Here, although the opportunity came later in the proceeding, the juvenile court afforded Mother a meaningful opportunity to confront and cross-examine adverse witnesses, call witnesses on her own behalf, and present her position to the court. Under these circumstances, the juvenile court did not violate a clear and unequivocal rule of law, and Mother's plain error claim fails on the second prong.

[¶18] Although we need not address the third prong, Mother also has not established the third prong, material prejudice. "To establish material prejudice, Mother must demonstrate a reasonable probability exists that, absent the error, she may have enjoyed a more favorable outcome." *In re SK*, 2024 WY 25, ¶ 49, 544 P.3d at 620 (quoting *In re VS*, 2018 WY 119, ¶ 37, 429 P.3d 14, 24 (Wyo. 2018)). Mother has not presented any argument or evidence showing she would have obtained a more favorable outcome had she been permitted to present opening and closing statements or cross-examine witnesses earlier in the proceeding, and nothing in the record indicates otherwise.

[¶19] The investigating officer testified Mother reported she was concerned for the safety of her two minor children because of Father's methamphetamine use. The officer testified that, based on his training, experience, and personal observations of Mother and Father, he believed Mother appeared to be under the influence of methamphetamine, and Father appeared to be coming down from a methamphetamine-induced high. The officer performed a UA on Father, and he tested presumptive positive for methamphetamine. Although Mother would not agree to give a UA, she admitted to relapsing on methamphetamine the night before by taking a pipe from Father's room. The minor children also tested positive for methamphetamine, amphetamine, and marijuana through hair follicle tests.

[¶20] Based on this evidence, the juvenile court found Mother failed to provide adequate care, maintenance and supervision for her children because she exposed them to methamphetamine. Mother has not presented any evidence disputing the juvenile court's conclusions. When the juvenile court afforded Mother an opportunity to provide a

statement, testify, call witnesses, or cross-examine prior witnesses, she did not present any evidence and instead stated the following:

> The only thing I really want to state is that [Father] is not even supposed to be at Motel 6, according to the owner, because he was fired from there for I don't know what reason, which is kind of -- was my issue that night. And [his girlfriend] was banging her head on the door and making a scene over jealousy. I mean, that's all I really have to say.

[¶21] Although the juvenile court did not afford Mother the opportunity to present opening or closing statements contemporaneously with the State, Father, and the guardian ad litem or to cross-examine witnesses during their testimony, the record does not establish a violation of a clear and unequivocal rule of law or resulting material prejudice. Accordingly, we find no plain error.

## CONCLUSION

[¶22] Mother's due process claim fails under plain error review. The juvenile court did not commit plain error when it did not invite Mother to give an opening or closing statement or by not allowing Mother to cross-examine witnesses during their testimony, because the juvenile court later afforded Mother an opportunity to do so. Affirmed.